PER CURIAM:
Douglas E. Whitney, a member of The Florida Bar, seeks review of the following judgment of the Board of Governors in a disciplinary action:
“The Complaint of The Florida Bar alleged that respondent, while acting as substitute Receiver for South Venice Groves Inc., wrongfully and without authorization withdrew $15,500 from the receivership account which he used for his own purposes. The withdrawals were made in March, 1965, November, 1966, and August, 1967. In September, 1966, respondent filed an official accounting with the Circuit Court in regard to this receivership which was fraudulent and intended to mislead the Court. The accounting stated respondent held assets as Receiver which he did not have and it did not reflect the unauthorized withdrawals of funds by respondent.
“The Bar’s Complaint also alleged that, during the period from April 1965 to September, 1966 while acting as the duly appointed guardian for Cordelia Grace Jessop, incompetent, respondent made unauthorized withdrawals of guardianship funds in the amount of $14,845.12. These funds were placed in respondent’s personal account.
“$12,450 of the money taken from the receiver’s account was deposited in the guardianship account in an effort to cover this shortage. Respondent filed a fraudulent accounting in the Jessop Guardianship, in an attempt to mislead the Court. The accounting did not reflect respondent’s unauthorized withdrawals.
“The total funds converted from the two defalcations was $17,895.12.
“The referee found that respondent did withdraw and use funds from the receivership account and the guardianship account in the amounts and on the dates as set out in the Complaint of The Florida Bar. Respondent, in his Answer, admitted the specific charges.
“The referee found further that the respondent repaid the money taken in each case. The referee heard 32 witnesses on respondent’s behalf including two Circuit Court judges, 10 attorneys, ministers and businessmen. He concluded that respondent enjoyed a fine reputation as an *747 attorney and judge in the community. The referee also concluded that when the facts concerning the shortages became known, respondent made a full and fair disclosure and demonstrated remorse and repentance.
“It is the recommendation of the referee that the respondent be found guilty as charged in the Complaint based on respondent’s full admission of guilt. He further recommends that respondent be suspended from the practice of law for two years with credit given back to the time of his voluntary withdrawal from the practice in June, 1968, as the referee feels that respondent has used this time to rehabilitate himself.
“The Board of Governors of The Florida Bar agrees with the referee’s finding of guilt. It disagrees with the recommendation of discipline.
“Respondent began his conversions in March of 1965 and continued this course of conduct until August of 1967. During this time respondent was appointed as the County and Juvenile Judge of Sarasota County. This appointment took place in November of 1966. While a judge, respondent continued his unconscionable course until detected. The fact that respondent obtained money to repay what he took after he was caught does not diminish the serious deficiency in character shown by the defalcations.
“The Bar and the Court cannot be flexible in their efforts to uncover and remove those found lacking in the necessary character to carry out with honesty a fiduciary relationship. Respondent has demonstrated his lack of character, both as a lawyer and as a judge. Therefore, it is
“ORDERED and ADJUDGED that respondent, Douglas E. Whitney be disbarred from the practice of law and that he pay the costs of these proceedings in the amount of $574.88.”
Respondent candidly admits the facts as found by the referee and the Board of Governors but contends that a judgment of disbarment is too severe and that the referee’s recommendation of a two-year suspension with credit for time during which respondent has voluntarily withdrawn from practice should be reinstated.
The record here contains letters from many prominent judges, lawyers, public officials and citizens of the area in which respondent resides. With reference to this evidence the referee said:
“In addition to Respondent’s own testimony, thirty-two witnesses testified in his behalf. This list includes two circuit judges, ten practicing attorneys in Sarasota County, two ministers, one justice of the peace and seventeen persons who were business associates or close frends. Included in the list of business associates and close friends were the mayor of Sarasota; a city commissioner and former mayor of Sarasota; the sheriff of Sarasota County; the Assistant Superintendent of Schools of Sarasota County; a woman who has worked for Respondent’s family and been in his home on many occasions; the District Director of Vocational Rehabilitation; the Chairman of the City Planning Board; the Chief Counselor of the Sarasota Juvenile Court; the District Supervisor of the Florida Parole Commission; and others holding similar positions of trust and confidence in the community. From the testimony of these witnesses it is established without any doubt that Respondent enjoyed a fine reputation as a capable attorney and an excellent reputation as a capable and qualified county judge; that he was a fine county judge who ran a good office with good procedures; that he showed courtesy to the persons who came before him; and had the respect and admiration of the voters in the county. After his initial appointment as county judge and when he first ran for office *748 he defeated his opponent by a margin of eight to one. It was further shown conclusively from the testimony that his deepest concern in connection with the duties of his office had to do with juveniles. He had established procedures and policies which took long strides toward the fair and just treatment of juvenile offenders. The several persons who work with juveniles and testified in behalf of Respondent were particularly impressed with his ability and his interest in this area.”
The evidence of these witnesses as to the good character of the respondent are impressive, but have little relevancy in arriving at a conclusion concerning his guilt or innocence. The charges made in the Complaint and admitted here go to the very heart of a lawyer’s qualification to be entrusted with the great responsibilities of his profession and when — as here — there is shown a total disregard, over an extended period of time, of basic concepts of honesty and reliability and a flagrant violation of trusts reposed in him, a judgment of disbarment is fully warranted.
The Rules provide for reinstatement of a disbarred attorney at a proper time and upon a showing of rehabilitation; but the burden is on the attorney in such case to establish that he is entitled to be restored to membership in the Bar. Evidence of the type above related would be highly pertinent — and persuasive — in such a proceeding, particularly when accompanied by evidence of facts showing the activities of the respondent subsequent to happening of the events which form the basis for disbarment.
We approve the findings in the judgment of the Board of Governors and hereby disbar the respondent, Douglas E. Whitney, from the practice of law in this state, with leave to apply for reinstatement in accordance with the provisions of the present disciplinary Article of the Integration Rules.
Judgment in the sum of $574.88 is hereby entered against the respondent for the cost of these proceedings for which let execution issue. Payment of said costs shall be a prerequisite to reinstatement.
It is so ordered.
DREW, CARLTON, ADKINS and BOYD, JJ., concur.
ERVIN, C. J., dissents with opinion.